FILED
United States Court of Appeals
Tenth Circuit

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**December 5, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRIAN KEITH BOWEN, JR.,

    Defendant - Appellant.

No. 25-7011
(D.C. No. 6:23-CR-00153-RAW-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **CARSON**, **KELLY**, and **ROSSMAN**, Circuit Judges.[**]
_____

When a litigant fails to raise an issue to the district court, we usually deem the matter forfeited. On appeal, we review forfeited issues under the plain error standard. For an error to be plain, the error must be "contrary to well-settled law." Here, the district court sentenced Defendant Brian Keith Bowen, Jr., to forty-eight months' imprisonment after determining that no Sentencing Guideline covered the offense of conviction. Our jurisdiction arises under 28 U.S.C. § 1291. We conclude

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument.

that even if the district court erred in making that determination, the error was not plain. We therefore affirm.

## I.

When a mother brought her two-year-old son to an Oklahoma hospital, doctors discovered a spiral fracture on his right humerus. Medical personnel also identified bruises on his face and swelling under his scalp. A Cherokee Nation investigation concluded that the child's injuries occurred while the mother's boyfriend, Defendant Brian Keith Bowen, Jr., cared for the child. Defendant told investigators that the child fell from a porch.

Federal prosecutors indicted Defendant in the United States District Court for the Eastern District of Oklahoma for committing child abuse in Indian Country under the Major Crimes Act, 18 U.S.C. §§ 1151, 1153. The government charged Defendant with violating Okla. Stat. Ann. tit. 21, § 843.5(A), which criminalizes willful and malicious harms to children under eighteen by persons who bear caretaking responsibilities. Defendant pleaded guilty.

At sentencing, the government submitted a memorandum arguing that the Sentencing Guidelines did not apply because the Sentencing Commission did not promulgate an analogous provision covering the violation of the Oklahoma statute under which the government charged Defendant. When no Guideline expressly covers the offense of conviction, Guideline § 2X5.1 instructs the district court to sentence defendants without calculating an advisory Guideline range and instead sentence them directly under 18 U.S.C. § 3553(a). Defendant did not challenge the

government's argument that the federal aggravated assault guideline, § 2A2.2, was not analogous. Probation agreed with the government that no analogous guideline existed. The presentence report concluded that the court could sentence Defendant to the maximum allowed by Oklahoma statute, which was life. Defendant did not object to this but filed a sentencing memorandum asking for a nineteen-month, time-served sentence. The district court determined the Guidelines did not apply and, relying on § 3553(a), sentenced Defendant to forty-eight months' imprisonment. Defendant appealed.

## II.

This appeal presents one question: whether the district court plainly erred in determining that no Guideline provision is analogous to Defendant's offense of conviction. "Typically, the interpretation of a provision of the Sentencing Guidelines would be a question of law that we would review de novo." United States v. Garcia-Caraveo, 586 F.3d 1230, 1232 (10th Cir. 2009) (citing United States v. Zuniga-Soto, 527 F.3d 1110, 1116–17 (10th Cir. 2008)). But because Defendant did not present this argument to the district court, we review for plain error. Id. (citing United States v. Juarez-Galvan, 572 F.3d 1156, 1158 (10th Cir. 2009)). Plain error exists when "(1) error, (2) that is plain, (3) which affects substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings" is present. Id. (citing United States v. Romero, 491 F.3d 1173, 1178 (10th Cir. 2007)). Defendant argued for this standard of review in his opening brief.

3

When a defendant commits an offense for which the Sentencing Commission has not promulgated a guideline, district courts must apply "the most analogous offense guideline." U.S.S.G. § 2X5.1. The commentary tells us that the statutory index does not list most assimilative crimes, so we require the district court to determine if a sufficiently analogous offense guideline exists. U.S.S.G. § 2X5.1 cmt. background. If one exists, the district court should apply the most analogous guideline. Id. If one does not exist, "the provisions of 18 U.S.C. § 3553 control" without reference to an advisory guideline range. Id.

Defendant contends the district court committed plain error in two ways. First, he asserts the district court ignored the "unambiguous text" of 18 U.S.C. § 113, the federal assault statute, which contemplates assaulting a child. Second, he posits that the district court ignored applicable case law.

Looking first at the text of the federal assault statute and Oklahoma's child abuse statute, the government takes what Defendant calls the "categorical" approach set forth in United States v. Clark, 981 F.3d 1154 (10th Cir. 2020). The government says the Oklahoma statute incorporates three distinct offenses: (1) willfully or maliciously harming (or threatening to harm) the health, safety, or welfare of a child; (2) willfully or maliciously failing to protect from harm (or threatened harm) the health, safety, or welfare of a child; and (3) willfully or maliciously injuring, torturing, or maiming a child. Defendant rejects a "categorical" approach, instead focusing on his actual conduct: an assault which caused the child to suffer injuries. The government points out that the indictment charged Defendant with willfully and

4

maliciously injuring the child. And under Oklahoma law, a willful and malicious injury does not require the use of force. Because the use of force is not required to commit a violation of the Oklahoma statute, the government contends it is not comparable to the federal assault statute which requires the use or attempted use of force. The federal assault statute criminalizes eight distinct forms of assault. The government did not charge Defendant with committing an assault against a young child, but rather willfully and maliciously injuring a child. The government argues this distinction is important because the Oklahoma statute does not require proof a defendant used force against a child, but only proof that Defendant's willful conduct (such as leaving a child unattended on a front porch) led to an injury (such as a fall from the porch—what Defendant said happened). The government says the federal assault statute does not cover that. The Oklahoma statute also covers a wide range of conduct that falls outside the orbit of § 113 such as threatened harms to a child's health and the willful failure to protect a child from harm.

As to applicable case law, Defendant relies primarily on our unpublished and non-precedential decision in United States v. Shell, No. 23-5086, 2024 WL 3455033 (10th Cir. July 18, 2024) (unpublished). In that case, the government charged Shell with one count of Child Abuse in Indian Country in violation of the same Oklahoma statute at issue here. Shell, 2024 WL 3455033, at *1. He moved to dismiss the indictment for failing to state an offense, arguing that Oklahoma's child abuse statute should not be assimilated under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. Id. The district court denied his motion and Shell appealed. Id. We held that

5

assimilating the assault provisions in Shell's case would violate Lewis v. United States, 523 U.S. 155 (1998). Id. So we reversed. Id. Lewis held that to determine whether a gap in federal law exists, we must ask whether any enactment of Congress punishes the defendant's act or omission. Id. at *2. If the answer is no, then the ACA presumably assimilates the statute. Id. If the answer is yes, we must further ask if the application of state law is precluded because applying it "would interfere with the achievement of a federal policy. . . ." Id. (quoting Lewis, 523 U.S. at 164). Stated otherwise, we must determine whether the state law would "effectively rewrite an offense definition that Congress carefully considered"; or federal statutes "reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue." Id. (quoting Lewis, 523 U.S. at 164). If any of these situations apply, then the district court should not assimilate the state statute. Id. The inquiry's north star is one of legislative intent—does "federal law indicate an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue?" Id. (citing Lewis, 523 U.S. at 166). In Shell, the government indicted Shell for willfully and maliciously injuring, torturing, or maiming a minor by assaulting him. Id. at *3. We concluded that the government likely could have prosecuted Shell under at least three subsections of § 113. Id. So, we concluded that assimilating the assault provisions of Oklahoma's statute would disrupt Congress's careful assault definitions. Id. at *4. We also opined that the detailed and comprehensive nature of § 113 suggested Congress's intent to occupy the field of assaultive conduct to the exclusion of Oklahoma state law. Id. To assimilate, we

6

stated, would risk impermissibly filling nonexistent gaps. Id. at *5. There can be no doubt that Shell's framework for determining if a gap exists in federal law is distinct from the framework here, which evaluates the analogousness of the federal guidelines to a state crime of conviction. But Defendant argues Shell's logic should apply here. In Defendant's view, if Shell should have been charged under the federal assault statute, then Defendant should have been sentenced under the corresponding federal assault guideline.

The question of whether the district court erred in this case is a close one, but one we need not decide. Instead, in determining whether Defendant is entitled to relief, we assume the district court erred and decide the question on prong two of our plain error analysis—whether the error is plain. "An error is plain if it is 'clear or obvious at the time of the appeal.'" United States v. Koch, 978 F.3d 719, 726 (10th Cir. 2020) (quoting United States v. Salas, 889 F.3d 681, 686–87 (10th Cir. 2018)). An "obvious" error must be "contrary to well-settled law." Id. (quoting Salas, 889 F.3d at 687.) "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue" in a published decision. Id. (quoting Salas, 889 F.3d at 687). The absence of published decisions from this court or the Supreme Court, however, does not absolutely preclude a finding of plain error. Id. (citing Salas, 889 F.3d at 687). But such an absence generally "will close the door on a claim that the error at issue is clear or obvious." United States v. Schneider, 704 F.3d 1287, 1304 (10th Cir. 2013) (Holmes, J., concurring joined by Martinez, J., to constitute a majority). And where other circuit

7

courts disagree with unpublished dispositions from this circuit, that disagreement weighs against a finding of plain error. See Koch, 978 F.3d at 726. (citing Salas, 889 F.3d at 687) (stating that the lack of "well settled" circuit precedent and circuit disagreement on a particular issue both weigh against a finding of plain error).

Here, the Guidelines' plain text does not directly resolve whether federal aggravated assault is sufficiently analogous to Oklahoma child abuse. We have no published Tenth Circuit or Supreme Court case on point. Shell provides some support for Defendant's position. But that case lacks precedential value and involves legal principles distinct from those present in this case. And at least two circuits have reached the opposite conclusion of Shell regarding the assimilation of state child abuse statutes. See United States v. Scott, 83 F.4th 796, 800 (9th Cir. 2023) (concluding Montana's state law regarding child abuse or neglect was properly assimilated under the Major Crimes Act because felony child abuse or neglect was distinct from any of the conduct listed in § 113); United States v. Brown, 608 F.2d 551, 553–54 (5th Cir. 1979) (holding that the government properly proceeded under the state child abuse statute as made applicable by the ACA); and United States v. Fesler, 781 F.2d 384, 390–91 (5th Cir. 1986) ("Because Congress has not covered the precise acts of child abuse covered by Texas state law, the ACA was properly invoked and applied."). So, even if we agreed that Shell's logic controlled the outcome here, the seeming disagreement among circuit courts with Shell weighs against finding any error here was clear or obvious at the time of Defendant's appeal.

Because the issue is not obvious under current well-settled law, even assuming the district court erred, any error was not plain.[1]

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge

---

[1] Because we conclude any error was not plain, we need not determine whether the error affected Defendant's substantial rights or seriously affects the fairness, integrity, or public reputation of judicial proceedings.