FILED
United States Court of Appeals
Tenth Circuit

November 3, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATE OF AMERICA,

      Plaintiff-Appellee,

v.

ANASTACIO GARCIA-CARAVEO,

      Defendant-Appellant.

No. 08-2140

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:08-CR-00148-JAP-1)**

---

Scott M. Davidson, Albuquerque, New Mexico, for Defendant-Appellant.

John Anderson, Assistant United States Attorney, Albuquerque, New Mexico, (Gregory J. Fouratt, United States Attorney, Albuquerque, New Mexico, and Paige Messec, Assistant United States Attorney, Albuquerque, New Mexico, on the brief) for Plaintiff-Appellee.

---

Before **BRISCOE, EBEL,** and **GORSUCH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

      Defendant-Appellant Anastacio Garcia-Caraveo appeals the sentence he received after pleading guilty to illegal reentry, following deportation, under 8

U.S.C. § 1326(a) and (b).  The base offense level for this crime under the sentencing guidelines is eight.  The PSR recommended a sixteen-point increase based on U.S.S.G. § 2L1.2(b)(1)(A)(ii), which provides that the court should increase a defendant's offense level for illegal reentry by sixteen points if the defendant has been deported after committing a "crime of violence."  Without objection, the district court relied on Garcia-Caraveo's prior conviction in California for robbery to sustain this increase.  On appeal, Garcia-Caraveo argues that it was plain error for the court to rely on his California robbery conviction to sustain this enhancement, because that offense did not constitute a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii).  Exercising the jurisdiction granted us by 28 U.S.C. § 1291, we AFFIRM.

## I.     Background

Garcia-Caraveo pled guilty to a one-count information charging him with illegal reentry into the United States under 8 U.S.C. § 1326(a) and (b).  His base offense level for illegal reentry was eight.  See U.S.S.G. § 2L1.2(a).  The presentence investigation report (PSR) recommended adding sixteen offense levels based on U.S.S.G. § 2L1.2(b)(1)(A)(ii), which provides that the court should increase a defendant's offense level for illegal reentry by sixteen points if the defendant has previously been deported after committing a "crime of violence."  The PSR noted that Garcia-Caraveo had been deported subsequent to a conviction for felony robbery in California and, therefore, was subject to this

sixteen-point increase. The PSR further recommended a three-level reduction for acceptance of responsibility under § 3E1.1, so Garcia-Caraveo's final recommended offense level was twenty-one. The PSR calculated Garcia-Caraveo's criminal history category as III. His Guidelines sentence range was, therefore, 46-57 months.

Garcia-Caraveo objected to the sixteen-level increase before the district court, but argued only that his conviction for felony robbery in California occurred approximately fifteen years before he was deported, and so that deportation should not be considered "subsequent to" his felony conviction. At his sentencing hearing, the district court agreed to modify the relevant language in the PSR to read that he was "deported on May 17, 2000, after a conviction in 1986 for robbery." (ROA Vol. III at 8.) Garcia-Caraveo agreed that this amendment resolved the concerns he had raised in his objection to the PSR. The district court then sentenced Garcia-Caraveo to forty-six months, the bottom end of the Guidelines range. This timely appeal followed.

## II.    Analysis

### A.    Standard of Review

For the first time in this appeal, Garcia-Caraveo argues that his felony robbery conviction in California does not constitute a "crime of violence" under Guidelines § 2L1.2(b)(1)(A)(ii). Typically, the interpretation of a provision of the Sentencing Guidelines would be a question of law that we would review <u>de</u>

novo.  See United States v. Zuniga-Soto, 527 F.3d 1110, 1116-17 (10th Cir.

2008).  Because Garcia did not present this argument to the district court,

however, our review is limited to plain error.  See United States v. Juarez-Galvan,

572 F.3d 1156, 1158 (10th Cir. 2009).  "We find plain error only when there is

(1) error, (2) that is plain, (3) which affects substantial rights, and (4) which

seriously affects the fairness, integrity, or public reputation of judicial

proceedings."  United States v. Romero, 491 F.3d 1173, 1178 (10th Cir. 2007).

This standard "presents a heavy burden for an appellant, one which is not often

satisfied."  Id.

      B.     Garcia-Caraveo's Conviction for Robbery in California Constituted a Conviction for a "Crime of Violence" Under U.S.S.G. § 2L1.2(b)(1)(A)(ii)

Our first step in conducting plain-error review is to determine whether the

district court committed error at all, and we conclude that it did not.  Garcia-

Caraveo argues that his 1986 conviction for robbery in California should not

subject him to the sixteen-level increase for prior commission of a crime of

violence.  See U.S.S.G. § 2L1.2(b)(1)(A)(ii).  The Guidelines' commentary on

§ 2L1.2(b)(1)(A) provides that a "crime of violence" includes:

> any of the following offenses under federal, state, or local law:
> Murder, manslaughter, kidnapping, aggravated assault, forcible sex
> offenses (including where consent to the conduct is not given or is
> not legally valid, such as where consent to the conduct is
> involuntary, incompetent, or coerced), statutory rape, sexual abuse
> of a minor, robbery, arson, extortion, extortionate extension of
> credit, burglary of a dwelling, or any other offense under federal,

- 4 -

state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

Id. cmt. (1)(B)(iii) (emphasis added).

To determine whether a particular state's criminal statute falls within the ambit of the term "crime of violence" under the Guidelines, we look not to how a state has labeled its statute, but rather consider whether the statute corresponds with the "uniform generic definition" of the crime, using the analytical framework set out in Taylor v. United States, 495 U.S. 575 (1990).[1]  To do so, we examine whether the state's statute "roughly correspond[s] to the definitions of [the crime] in a majority of the States' criminal codes," id. at 589, as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code.  See, e.g., United States v. Santiesteban-Hernandez, 469 F.3d 376, 379 (5th Cir. 2006).

Under California law, robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  Cal. Penal Code § 211.  The California courts have explained that the use of force or fear during either the perpetration of the theft, or while attempting to get away, converts a theft into a robbery.  See People v. Gomez, 179 P.3d 917, 921 (Cal. 2008); People v. Flynn,

---

[1]In Taylor, the Supreme Court interpreted the "violent felony" provision of the Armed Career Criminal Act.  See Taylor, 495 U.S. at 581 (citing 18 U.S.C. § 924(e)).  This circuit applies Taylor's analytical framework to questions of the scope of the term "crime of violence" in U.S.S.G. § 2L1.2 as well.  See Juarez-Galvan, 572 F.3d at 1159 n.4; Zuniga-Soto, 527 F.3d at 1119-1121.

91 Cal. Rptr. 2d 902, 906 (Cal. Ct. App. 2000) ("The use of force or fear to escape or otherwise retain even temporary possession of the property constitutes robbery.").

At common law, however, robbery occurred only when the perpetrator used force or intimidation <u>before or during</u> the taking itself; force used to retain the property or to escape did not suffice to transform larceny into robbery. <u>See</u> 3 Wayne R. LaFave, <u>Substantive Criminal Law</u> § 20.3(e) (2d ed. 2003) ("[U]nder the traditional view it is not robbery to steal property without violence or intimidation . . . although the thief later, in order to retain the stolen property or make good his escape, uses violence or intimidation upon the property owner."). By defining as robbery crimes in which the accused uses force or violence either during the taking <u>or</u> the getting away, Garcia-Caraveo argues that California Penal Code § 211 is broader than the "uniform generic definition" of robbery. We disagree.

Before turning to the merits of this issue, we first note that this court's decision in <u>United States v. Servin-Acosta</u>, 534 F.3d 1362 (10th Cir. 2008)—although it dealt with nearly identical facts—does not dictate the outcome here. In <u>Servin-Acosta</u>, the defendant pled guilty to illegal reentry. At sentencing, the district court increased his offense level by sixteen because he had been deported after being convicted of felony robbery in California, under California Penal Code § 211. <u>Id.</u> at 1364. On appeal, the defendant argued that

the sixteen-level increase for a crime of violence was inappropriate because "the California [robbery] statute is broader than generic robbery." Id. at 1366. Specifically, the defendant argued that "[t]he California statute is broader . . . because it encompasses the use of force to effect an escape after the taking has occurred." Id.

In Servin-Acosta, the government conceded that the California robbery statute was broader than the "uniform generic definition" of robbery. Nonetheless, the government argued that it should still constitute a "crime of violence" because "'robbery' is one of the felonies enumerated in § 2L1.2's definition of *crime of violence*[ and t]he fact that the robbery statute in California may not include the same application of force as a generic robbery is irrelevant." Servin-Acosta, 534 F.3d at 1366 (internal quotation omitted, emphasis in original). This court rejected this argument, further noting that the government had "conceded that second-degree robbery in California is broader than generic robbery, and it [] presented no evidence that Mr. Servin-Acosta's specific offense was generic robbery. . . . Accordingly, we must remand for further sentencing proceedings." Id. at 1367. Although factually similar to the case currently before us, Servin-Acosta is not binding precedent for the proposition that California's definition of robbery is broader than the "uniform generic definition" because it encompasses violence in the taking away. This court did not actually decide that issue; it merely accepted the government's concession that California's statute

was broader than the generic definition.[2]  Thus, that issue was not before the court.  That decision is not, therefore, binding precedent on this issue.  See Juarez-Galvan, 572 F.3d at 1161 ("Contrary to [the defendant's] assertion, this court has not held that Cal. Penal Code § 211 is broader than the generic definition of robbery. Rather, in Servin-Acosta, we simply explained that the government had conceded the point."); see also Romero, 491 F.3d at 1177 ("[S]tare decisis requires that we accord precedential value to [our prior decision] as to the particular issues that it actually decided." (emphasis added)); United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc., 207 F.3d 1193, 1199-1200 (10th Cir. 2000) (refusing to grant precedential weight to a jurisdictional question assumed, but not explicitly decided, by a prior panel, even though that jurisdictional issue was necessary to the holding in the prior case, and stating that "'[i]n order for a decision to be given stare decisis effect with respect

---

[2] This court will often avoid accepting a party's concession of a legal matter, especially where that concession leads to reversal of the district court. See United States v. Avery, 295 F.3d 1158, 1169 (10th Cir. 2002) ("A party's concession of legal error . . . cannot, standing alone, justify reversing a district court, nor can that concession relieve this court of its obligation to evaluate the merits of the legal issue presented on appeal."); United States v. Duran, 133 F.3d 1324, 1329 (10th Cir. 1998) ("The government concedes that the instruction constituted plain error, but nevertheless, we must still conduct our own independent review of the record to determine whether this case should be remanded."); United States Wheeler, 230 F.3d 1194, 1197 (10th Cir. 2000) (rejecting government's concession of district court's legal error at sentencing). Nonetheless, it is clear that, in Servin-Acosta, this court merely accepted the government's concession that California's robbery statute was broader than the generic definition of robbery, rather than deciding the issue for itself.

to a particular issue, that issue must have been actually decided by the court'" (quoting 18 James Wm. Moore, et al., Moore's Federal Practice § 134.04[5] (3d ed. 1999))).

Turning to the merits, we conclude that California's robbery statute, as interpreted by the California Supreme Court, is in line with the uniform generic definition of robbery and, therefore, that the sixteen-offense-level increase imposed by the district court was appropriate. While the old common law required that the force or violence used in a robbery occur before or during the taking of property, "a different result is often possible today as a result of legislative or judicial adoption of a continuing offense theory of the crime." 3 LaFave, supra, § 20:3(e). Under this theory, a robbery "has occurred not only if the perpetrator uses force or intimidation to take possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape," because "a 'taking' is not complete . . . until the perpetrator has neutralized any immediate interference with his or her possession." State v. Mitchell, 675 S.E.2d 435, 438 (S.C. 2009) (quotations omitted). If we find that the continuing offense theory of robbery is enshrined in "a majority of the States' criminal codes," Taylor, 495 U.S. at 589, then we may say that the uniform, generic definition of robbery incorporates it as well.

Surveying the landscape of state criminal codes, we first note that few states still adhere to the old strict common law requirement of prior or contemporaneous force. Only five states—Georgia, Kansas, Mississippi, New Mexico, and Tennessee—clearly maintain the rule that, in order to commit robbery, the perpetrator must use force before or during the taking itself. See Hicks v. State, 207 S.E.2d 30, 37 (Ga. 1974); State v. Dean, 824 P.2d 978, 981 (Kan. 1992); Clayton v. State, 759 So. 2d 1169, 1172 (Miss. 1999); State v. Lewis, 867 P.2d 1231, 1234 (N.M. Ct. App. 1993); State v. Owens, 20 S.W.3d 634, 641 (Tenn. 2000).

Next, twelve states have adopted an intermediate position, holding—with some variation—that force used after the taking to retain property can support a charge of robbery, but force used merely in the course of escape cannot. See Alaska Stat. § 11.41.510; Conn. Gen. Stat. § 53a-133; Me. Rev. Stat. Ann. tit. 17-A, § 651; Okla. Stat. tit. 21, § 792; S.D. Codified Laws § 22-30-2; Wis. Stat. § 943.32(1)(a); State v. Kvale, 302 N.W.2d 650, 652-53 (Minn. 1981); State v. Kelly, 43 S.W.3d 343, 348-50 (Mo. Ct. App. 2001); State v. Hope, 345 S.E.2d 361, 363-64 (N.C. 1986); State v. Lynch, 770 A.2d 840, 848-49 (R.I. 2001); Quesinberry v. Commonwealth, 402 S.E. 2d 218, 224 (Va. 1991); State v. Johnson, 121 P.3d 91, 92 (Wash. 2005).

There are, thus, thirty-one remaining states[3] that have, either through legislative enactment or by judicial decision, adopted the continuing offense theory of robbery.  See Ala. Code § 13A-8-43; Ariz. Rev. Stat. Ann. § 13-1901(2); Ark. Code Ann. § 5-12-102(a); Cal. Penal Code § 211; Del. Code Ann. tit. 11, § 831(b); Fla. Stat. § 812.13(3)(a); Haw. Rev. Stat. § 708-842; Iowa Code § 711.1; Mich. Comp. Laws § 750.530(2); Mont. Code Ann. § 45-5-401(3); Nev. Rev. Stat. § 200.380(1)(c); N.H. Rev. Stat. Ann. § 636:1(II); N.J. Stat. Ann. § 2C:15-1(a); N.D. Cent. Code § 12.1-22-01(3)(a); Ohio Rev. Code Ann. § 2911.02(A); 18 Pa. Cons. Stat. Ann. § 3701(a)(2); Tex. Penal Code Ann. § 29.01; Utah Code Ann.§ 76-6-301(2)(c); Wyo. Stat. Ann. § 6-2-401(d); People v. Villalobos, 159 P.3d 624, 627 (Colo. App. 2006); State v. Martinez, 988 P.2d 710, 713-14 (Idaho Ct. App. 1999); People v. Hay, 840 N.E.2d 735, 741 (Ill. App. Ct. 2005); Young v. State, 725 N.E.2d 78, 81 (Ind. 2000); Mack v. Commonwealth, 136 S.W.3d 434, 437 (Ky. 2004); State v. Meyers, 620 So. 2d 1160, 1162-63 (La. 1993); Ball v. State, 699 A.2d 1170, 1183-85 (Md. 1997); Commonwealth v. McCourt, 781 N.E.2d 808, 814 (Mass. 2003) (citing Commonwealth v. Sheppard, 537 N.E. 2d 583 (Mass. 1989)); State v. Bell, 233

---

[3]Two states—Vermont and West Virginia—do not appear to have addressed the question of when the use of force must occur for the purposes of a robbery conviction.  Each of those states, however, employs a common-law, rather than statutory, definition of the term robbery.  See State v. Francis, 561 A.2d 392, 398 & 399 n.5 (Vt. 1989); State v. Neider, 295 S.E.2d 902, 907 (W.Va. 1982).  Even if both states were added to the common law side of the ledger, however, it would not tip the balance in Garcia-Caraveo's favor.

N.W.2d 920, 922 (Neb.1975); <u>People v. Nelson</u>, 649 N.Y.S.2d 754, 755 (N.Y. App. Div. 1996); <u>State v. Jones</u>, 812 P.2d 9, 10 (Or. Ct. App. 1991); <u>State v. Moore</u>, 649 S.E.2d 84, 89-91 (S.C. Ct. App. 2007).

Further, distinguished secondary sources also support our conclusion that the uniform generic definition of robbery incorporates the continuing offense theory. The Model Penal Code, for instance, holds that an act of force or violence "shall be deemed 'in the course of committing a theft' if it occurs in an attempt to commit theft <u>or in flight after the attempt or commission</u>." Model Penal Code § 222.1 (emphasis added). Professor LaFave's treatise deems the continuing offense theory "a desirable change" from the common law. 3 LaFave, <u>supra</u>, § 20.3(e). Another treatise points out:

> [C]onceptually, [the continuing offense theory] is not necessarily inconsistent with the common-law theory of robbery: A thief who finds it necessary to use force or threatened force after a taking of property in order to retain possession may in legal contemplation be viewed as one who never has the requisite dominion and control of the property to qualify as a "possessor." Hence, it may be reasoned, the thief has not "taken" possession of the property until his use of force or threatened force has effectively cut off any immediate resistance to his "possession."

4 Charles E. Torcia, <u>Wharton's Criminal Law</u> § 463 (15th ed. 1996). Moreover, we note that our conclusion comports with the decisions of the other circuit courts to consider whether California Penal Code § 211 falls within the uniform generic definition of robbery with respect to the required timing of the use of force. <u>See</u>

United States v. Tellez-Martinez, 517 F.3d 813, 815 (5th Cir. 2008) ("[R]obbery under § 211 of the California Penal Code falls within the generic or contemporary meaning of robbery . . . ."); United States v. Becerril-Lopez, 541 F.3d 881, 892 (9th Cir. 2008) ("Though, traditionally, force used during an escape does not satisfy the force element of robbery, the modern approach is in line with California's law." (citing Model Penal Code § 222.1)).

In light of this authority, we hold that, with respect to when the use or threat of force must occur, California Penal Code § 211 falls within the uniform generic definition of robbery, and thus is a "crime of violence" for the purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).[4]  Forty-three of the fifty states have rejected the old common-law requirement that force must be used before or during the taking, and only five have explicitly retained it.  Even in light of the rule of lenity, which counsels us to interpret ambiguous criminal statutes—which § 2L1.2 may be—in favor of the accused, Garcia-Caraveo's side of the ledger comes up short.  See House v. Hatch, 527 F.3d 1010, 1028 (10th Cir. 2008) ("[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." (quoting United States v. Bass, 404 U.S. 336 (1971))).  Even if the twelve states that have adopted an intermediate approach were added to Garcia-Caraveo's column, that

---

[4]We take care to note, however, that our ruling is limited to the issue of the timing of the use or threat of force provided for in California Penal Code § 211. Whether the entirety of California's robbery statute is within the uniform generic definition of robbery is a question that is not before this court.

leaves a solid majority of thirty-one states that adhere to the continuing offense theory of the crime. Under Taylor, therefore, Garcia-Caraveo's conviction for robbery in California was for a "crime of violence," and the district court's imposition of a sixteen-point increase in his offense level was not error.

C.      Even if California's Robbery Statute is Broader Than the Uniform Generic Definition of Robbery, Garcia-Caraveo has Failed to Show Plain Error

Had the sentencing court committed error in applying the sixteen-level increase in U.S.S.G. § 2L1.2, Garcia-Caraveo cannot demonstrate that that error would be plain. Drawing every conceivable inference in Garcia-Caraveo's favor, at best he can point only to some uncertainty as to the breadth of California Penal Code § 211, as compared to generic robbery. See Juarez-Galvan, 572 F.3d at 1161 (holding that the district court's conclusion that § 211 is not broader than generic robbery was not plain error). Where there is uncertainty in the law, we cannot say that a district court's decision constituted plain error. See id.

Given our conclusions that the district court did not commit error, and that even if it had, that error would not have been plain, we need not address Garcia-Caraveo's arguments on the third and fourth elements of plain-error review.

III.   Conclusion

Under the framework set out in Taylor, California Penal Code § 211 is not broader than the uniform, generic definition of robbery, and so it is a "crime of

violence" for the purposes of U.S.S.G. § 2L1.2. Therefore, we AFFIRM Garcia-Caraveo's sentence.